IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER C. LUCK and                          :        No. 3:12cv887
KENNETH N. WYNDER, JR.,                    :
                        Plaintiffs          :        (Judge Munley)
                                            :
        v.                                  :
                                            :
MOUNT AIRY #1, LLC;                         :
LIANNE R. ASBURY;                           :
TREVOR TASETANO;                            :
PENNSYLVANIA STATE POLICE;                  :
JOSEPH J. KULICK, JR.; and                  :
MARK A. KAYE,                               :
                        Defendants          :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition are the defendants' motions to dismiss the complaint (Docs. 14, 15) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motions have been fully briefed and are ripe for disposition.

## Background

On May 2, 2011, Plaintiffs Peter Luck and Kenneth Wynder (collectively "plaintiffs") entered Mount Airy Casino located in Mount Pocono, Pennsylvania, and spoke with casino security guards.  (Doc. 1, Compl. ¶ 17).  Defendant Trevor Tasetano (hereinafter "Defendant Tasetano"), a Mount Airy Casino security supervisor, asked plaintiffs to leave because they were talking about unions and making the security guards nervous.  (Id.)  Plaintiffs voluntarily left the casino.  (Id.)  They were never notified that they could not return to the premises.  (Id.)

On or about May 14, 2011, plaintiffs again went to Mount Airy Casino.  (Id. ¶ 14).  Plaintiffs sat and played slot machines.  (Id.)  They were on the premises for approximately one hour when security responded to a nearby scuffle involving other patrons.  (Id.)  Three security guards

surrounded plaintiffs.  (Id.)  Defendant Tasetano demanded identification from plaintiffs.  (Id. ¶¶ 5, 14).  Plaintiffs asked why they were being questioned.  (Id. ¶ 14).  Defendant Tasetano told them that they were not permitted on the premises because of an incident that occurred on May 2, 2011.  (Id.)

Plaintiffs stated that they did not want any trouble and would voluntarily leave.  (Id. ¶ 14).  Defendant Tasetano said they could not leave and that he was calling the Pennsylvania State Police.  (Id.)  Security escorted plaintiffs through the casino area in front of the other patrons.  (Id. ¶ 15).  They proceeded to the front of the casino and met with Defendants Pennsylvania State Trooper Mark A. Kaye (hereinafter "Defendant Kaye") and Trooper Joseph J. Kulick, Jr. (hereinafter "Defendant Kulick").  (Id. ¶¶ 8, 15).  The troopers escorted plaintiffs to an upstairs office.  (Id. ¶ 15).  Defendant Lianne R. Asbury, Director of Casino Security, (hereinafter "Defendant Asbury") and Defendant Tasetano prompted the troopers to arrest plaintiffs.  (Id.)  Defendants Kaye and Kulick arrested plaintiffs and issued them citations for criminal trespass.  (Id.)  Plaintiffs were released and escorted out of the casino by security and the troopers.  (Id.)

Upon exiting the casino, plaintiffs encountered Plaintiff Wynder's friend and friend's wife, with whom Plaintiff Luck was also familiar.  (Id. ¶ 16).  They greeted plaintiffs and invited them into the casino.  (Id.)  Plaintiffs explained that they could not go into the casino because they were arrested and told not to return.  (Id.)

On or about June 7, 2011, following a trial on the criminal trespass charges, plaintiffs were found not guilty.  (Id. ¶ 22).  All the charges were dismissed or terminated in their favor.  (Id.)

Plaintiffs claim that Mount Airy Casino had the ability and opportunity to notify plaintiffs that they were no longer permitted on the premises after the incident on May 2, 2011.  (Id. ¶ 18).  Plaintiffs are members of the Casino Player's Club, therefore the casino possessed their addresses and could have sent them written notices of the restriction.  (Id.)  Mount Airy Casino failed to do so.  (Id.)

Plaintiffs continue to be prohibited from entering Mount Airy Casino. (Id. ¶ 23).  Such prohibition prevents Plaintiff Luck from participating in several golf events which involve his private advertising business.  (Id.) His participation generates approximately $5,000 in advertising revenue each year.  (Id.)  Plaintiff Wynder is the President of the Law Enforcement Employees Benevolent Association.  Plaintiff Luck is also a member.  (Id. ¶ 24).  As a result of their prohibition from Mount Airy Casino, they have suffered stigmatizing affects regarding their positions.  (Id.)

On May 11, 2012, plaintiffs filed their complaint.  (Doc. 1).  Plaintiffs name the following defendants: the Pennsylvania State Police, Trooper Kaye, Trooper Kulick, Mount Airy Casino, Asbury and Tasetano.  Plaintiffs' complaint contains three counts pursuant to 42 U.S.C. § 1983 and § 1988 against all of the defendants: Count I, false arrest and false imprisonment; Count II, malicious prosecution; and Count III, conspiracy.  Plaintiffs assert Count IV, failure to train and supervise, against the Pennsylvania State Police pursuant to 42 U.S.C. § 1983 and § 1988.  Additionally, plaintiffs assert four state law claims against all of the defendants: Count V, a state constitutional claim for false arrest and false imprisonment pursuant to Article I, Section 8 of the Pennsylvania Constitution; Count VI, false arrest and false imprisonment; Count VII, malicious prosecution; and Count VIII,

3

intentional infliction of emotional distress.

On July 16, 2012, Defendants Pennsylvania State Police, Kaye and Kulick (collectively "Commonwealth Defendants") filed a motion to dismiss plaintiffs' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 14).  Also on July 16, 2012, Defendants Mount Airy Casino, Asbury and Tasetano (collectively "Casino Defendants") filed a motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6).  (Doc. 15).  The parties briefed the issues, bringing the case to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this case brought under 42 U.S.C. § 1983 (hereinafter "Section 1983") and 42 U.S.C. § 1988 (hereinafter "Section 1988") for violation of plaintiffs' constitutional rights. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

The court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of a complaint's

allegations.  Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  Phillips, 515 F.3d at 232 (citation omitted).  "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief."  Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997).  However, "we are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).

To determine the sufficiency of a complaint, the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. Generally, a court should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**Discussion**

The Commonwealth Defendants and the Casino Defendants filed two separate motions to dismiss the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docs. 14, 15).  Collectively, they challenge all of the counts in the complaint except Count VIII, which asserts an intentional infliction of emotional distress claim against all the defendants under Pennsylvania law.  Plaintiffs brings their federal law claims against all defendants pursuant to Section 1983, therefore we will briefly address that statute.

Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to establish a claim under Section 1983, two criteria must be met.  First, the conduct complained of must have been committed by a person acting under color of state law.  Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law.  Id.

Defendants assert several grounds to support their motions to dismiss plaintiffs' complaint.  We will address each motion separately.

## A. Commonwealth Defendants' Motion to Dismiss

Commonwealth Defendants assert the following arguments: (1) the complaint fails to state a cause of action for false arrest, false imprisonment or malicious prosecution; (2) Commonwealth Defendants are entitled to qualified immunity; (3) plaintiffs' claims against the Commonwealth Defendants in their official capacities are barred by Eleventh Amendment immunity; (4) plaintiffs' claims for compensatory and punitive damages against the Commonwealth Defendants in their official capacities should be dismissed with prejudice; (5) plaintiffs' claim under Article I, Section 8 of the Pennsylvania Constitution should be dismissed because no private cause of action exists under Pennsylvania law; (6) the complaint fails to state a cause of action for conspiracy; and (7) the complaint fails to state a cause of action against Defendant Pennsylvania

7

State Police for failure to train.  (Doc. 14).  We will address each of the Commonwealth Defendants' arguments, in turn.

## 1.  Failure to state a claim for false arrest, false imprisonment or malicious prosecution

Commonwealth Defendants argue that plaintiffs' complaint fails to state causes of action for false arrest, false imprisonment or malicious prosecution in Counts I and II of the complaint.  It appears from defendants' brief that they are arguing that both plaintiffs' federal and state law claims should be dismissed.  Plaintiffs' state law claims are contained in Counts VI and VII.  The parties primarily dispute whether defendants had probable cause.

The existence of probable cause is implicated in each of plaintiffs' federal law claims.  "[P]robable cause is defined in terms and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing a crime."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000) (citing Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997)).  "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."  Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).  An "arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant" to an arrest made without probable cause.  Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).  Furthermore, an element of a Section 1983 malicious prosecution claim is that the

proceeding was initiated without probable cause.[1]  Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).

Plaintiffs' claims brought pursuant to Pennsylvania state law also require probable cause.  "Probable cause is defined under state law just as it is under federal law."   Matasavage v. Corby, No. CIV. A.3CV982105, 2000 WL 1839138, at *9 (M.D. Pa. Oct. 13, 2000) (citing Commonwealth v. Gayle, 673 A.2d 927, 931 n. 9 (Pa. Super. Ct. 1996)).  "An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).

Under Pennsylvania law, "[t]he elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful." Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Cmwlth. Ct. 2010).  A plaintiff asserting a Pennsylvania malicious prosecution claim must prove: (1) the institution of a proceeding against plaintiff without probable cause and with malice; and (2) the proceedings terminated in plaintiff's favor. Gilbert v. Feld, 842 F. Supp. 803, 814 (E.D. Pa. 1993) (citing Griffiths v. CIGNA Corp., 988 F.2d 457, 463 (3d Cir. 1993); Kelley v. Gen. Teamsters, Local Union 249, 544 A.2d 940, 941 (Pa. 1988)).  Probable cause within a

---

[1] A Section 1983 malicious prosecution action requires the following: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  Kossler, 564 F.3d at 186 (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

malicious prosecution context requires the court to examine both subjective and objective components, analyzing whether the defendant honestly believed that the accused committed the crime charged and whether defendant reasonably believed the accused was guilty of the crime.  See id. at 815.

In the instant case, plaintiffs were arrested for criminal trespass. Under the Pennsylvania criminal trespass statute, "probable cause exists for an arrest for criminal trespass when the facts and the circumstances are sufficient for a prudent person to believe that the suspect: (1) entered or broke into a building or occupied structure, (2) knowing that she or he had no license or privilege to do so."  Wright v. City of Phila., 409 F.3d 595, 603 (3d Cir. 2005); 18 PA. CONS. STAT. § 3503(a)(2).  Commonwealth Defendants focus its argument on the assertion that they had probable cause to arrest plaintiffs.  They claim that they were informed by Mount Airy staff that plaintiffs were banned from the property and told never to return.  Based on this information, they argue that they had probable cause to believe at the time of the arrest that plaintiffs committed criminal trespass.  Plaintiffs contend that defendants lacked probable cause because there was no information given to defendants that plaintiffs received notice that they were not allowed on the premises, therefore an element of the crime of criminal trespass is lacking.

We find that plaintiffs' sufficiently pled lack of probable cause. Plaintiffs allege that Defendants Kaye and Kulick relied on the information that Defendants Asbury and Tasetano provided, specifically that the plaintiffs were not permitted on the premises.  However, Defendants Kaye and Kulick did not question the plaintiffs or pursue any other investigation.

They acted solely on the command of Defendants Asbury and Tasetano. While defendants claim they had information that plaintiffs were not permitted on the premises, based on the allegations in the complaint, defendants lacked any information to support the belief that plaintiffs knowingly lacked the privilege to be on the casino property.  Therefore, we will deny defendants' motion to dismiss based on plaintiffs' allegations concerning probable cause in support of plaintiffs' federal and state law claims of false arrest, false imprisonment and malicious prosecution.[2]

Commonwealth Defendants also assert that plaintiffs cannot demonstrate that they suffered a deprivation of liberty as required under a federal Section 1983 malicious prosecution claim.[3]  They claim that plaintiffs only allege that they received citations and attended a court proceeding.  Plaintiffs contend that they were deprived of liberty when detained on the gaming floor, issued citations and escorted off of the premises.

Under a Section 1983 malicious prosecution claim, a plaintiff suffers a deprivation of liberty "consistent with the concept of seizure as a consequence of a legal proceeding."  Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d

---

[2]  While we find plaintiffs sufficiently alleged the absence of probable cause in their complaint, we are only evaluating the allegations at a motion to dismiss stage.  Defendants are not precluded from raising the argument as to probable cause later during litigation when the record has been developed.

[3]  A federal law Section 1983 malicious prosecution claim requires the plaintiff to suffer a deprivation of liberty.  A Pennsylvania malicious prosecution claim does not have the same requirement.

11

Cir. 2003)).  The Third Circuit Court of Appeals found that a person was "seized" within the meaning of malicious prosecution in a case where the plaintiff "had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania."  Gallo v. City of Phila., 161 F.3d 217, 222 (3d Cir. 1998).  Courts have generally required a deprivation more than mere summons to appear in court.  See Dibella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005).

In the present case, we agree with Commonwealth Defendants and find plaintiffs failed to allege a deprivation of liberty as a result of a legal proceeding.  Plaintiffs only recite facts pertaining to their seizure and arrest prior to the institution of a legal proceeding.  It appears from the complaint that plaintiffs were required to attend a trial on the criminal trespass charges, however, this fact alone does not support a finding of a deprivation of liberty.  Plaintiffs did not explain how they were deprived of their liberty to the level shown in Gallo.  See Gallo, 161 F.3d at 222. Therefore,  we will grant defendants' motion to dismiss plaintiffs' Section 1983 malicious prosecution claim.

## 2.  Qualified immunity

Commonwealth Defendants argue that they are entitled to qualified immunity.  Qualified immunity absolves a police officer of liability "if he can show that a reasonable officer with the information he possessed at the time could have believed that his conduct was lawful in light of the law that was clearly established . . . ."  Brown v. Muhlenberg Twp., 269 F.3d 205, 211 (3d Cir. 2001) (citing Anderson v. Creighton, 483 U.S. 635, 641

(1987)). "Qualified immunity insulates from civil liability government officials performing discretionary functions insofar as "'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" <u>Forbes v. Twp. of Lower Merion</u>, 313 F.3d 144, 148 (3d Cir. 2002) (quoting <u>Anderson</u>, 483 U.S. at 638). Courts apply a two-step process to determine whether defendants are entitled to qualified immunity. First, the court must determine whether a constitutional or federal right was violated. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Second, we must determine whether that right was "clearly established." <u>Id.</u>

A right is clearly established for qualified immunity purposes where its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Sharp v. Johnson</u>, 669 F.3d 144, 159 (3d Cir. 2012) (quoting <u>Saucier</u>, 533 U.S. at 202). "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 194-95.

Commonwealth Defendants argue there were no constitutional violations and, even if there were, plaintiffs' rights were not clearly established at the time of their arrests provided the information the Commonwealth Defendants possessed. Plaintiffs argue that defendants have not met their burden of asserting facts that they were acting within the scope of their discretionary authority at the time of alleged acts. They also assert that their alleged constitutional violations were clearly established at the time of their arrest.

In applying the two-step process to the present case, we conclude

13

that plaintiffs adequately alleged that defendants violated plaintiffs' rights under the Fourth Amendment.  Plaintiffs allege that the troopers lacked probable cause, arrested them and issued citations for criminal trespass all at the direction of Defendants Asbury and Tasetano.  Plaintiffs allege that these actions caused them to be maliciously prosecuted for criminal trespass.  Therefore, plaintiffs pleadings satisfy the first prong of our analysis.

We find that the second element is also satisfied, as plaintiffs' Fourth Amendment rights were clearly established at the time of plaintiffs' arrests.  A reasonable officer would have known that the alleged actions were unlawful and would have violated plaintiffs' clearly established constitutional rights.  At this stage of the litigation, we will decline to applying qualified immunity to defendants' actions and deny defendants' motion.

## 3.  Claims Against Defendants in their Official Capacities are barred by Eleventh Amendment

In the complaint, plaintiffs assert their claims against Defendants Kaye and Kulick in their individual and official capacities.  Commonwealth Defendants argue that plaintiffs' claims against the troopers in their official capacities are barred by the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND XI.  Eleventh Amendment sovereign immunity protects

14

unconsenting states and state agencies from suit brought in federal court. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009).  This protection extends to state agencies and departments, such as the Pennsylvania State Police.  See Capogrosso, 588 F.3d at 185. It also applies to state officials sued in their official capacities because the state is the real party in interest, resulting in recovery from the state treasury.  Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990).

Eleventh Amendment immunity is not absolute.  There are three narrow exceptions to sovereign immunity: (1) abrogation by an Act of Congress; (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation.  M.A. ex rel. E.S. v. State-Operated Sch. Dist., 344 F.3d 335, 344-45 (3d Cir. 2003) (citing MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001)).

Here, Commonwealth Defendants claim that the Eleventh Amendment bars suit against them in their official capacities.  We agree and conclude that the Eleventh Amendment immunity protects the Pennsylvania State Police and the troopers sued in their official capacities. Furthermore, none of the exceptions apply.  First, Congress did not abrogate states' sovereign immunity by enacting Section 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  A state is not a recognized "person" that may be liable under Section 1983.  Id. at 71. Second, Pennsylvania did not consent to be sued under Section 1983.  To find a state consented to suit, such a waiver must be "stated 'by the most express language or by such overwhelming implications from the text as

15

(will) leave no room for any other reasonable construction.'" <u>Edelman v.</u>
<u>Jordan</u>, 415 U.S. 651, 673 (1974) (quoting <u>Murray v. Wilson Distilling Co.</u>,
213 U.S. 151, 171 (1909)).  Pennsylvania has not waived its sovereign
immunity with respect to Section 1983 claims.  <u>See</u> 42 PA. CONST. STAT. §
8521(b).  Finally, plaintiffs do not request prospective relief.

We will grant defendants' motion and dismiss all claims against the
Pennsylvania State Police.  As a suit against defendants acting in their
official capacities is the same as one asserted against the agency, the
claims against Defendants Kaye and Kulick in their official capacities will
also be dismissed.

**4.  Damages**

Commonwealth Defendants also argue that, to the extent that
plaintiffs' claims for compensatory and punitive damages are asserted
against defendants in their official capacities, they should be dismissed.
Pursuant to our ruling above applying Eleventh Amendment sovereign
immunity, we agree with defendants and will grant their motion.
Accordingly, plaintiffs' claims for damages against the Commonwealth
Defendants in their official capacities will be dismissed.

**5.  Pennsylvania Constitutional Law Claims**[4]

In Count V of the complaint, plaintiffs assert a false arrest and false
imprisonment claim against the Commonwealth Defendants pursuant to
Article 1, Section 8 of the Pennsylvania Constitution.  Commonwealth
Defendants move to dismiss Count V, arguing that the Pennsylvania

_____

[4] Plaintiffs assert a false arrest and false imprisonment claim under
Article I, Section 8 of the Pennsylvania Constitution (Count V) and a
separate count under state law (Count VI).  This section only addresses
plaintiffs' Pennsylvania Constitution claim.

16

Constitution does not provide a cause of action for damages.   We agree.
See Jones v. City of Phila., 890 A.2d 1188, 1215-16 (Pa. Commw. Ct.
2006).  While the plaintiffs are correct that the Pennsylvania Supreme
Court has not yet ruled on the issue, other courts have declined to find
Pennsylvania Constitution creates a private cause of action.  See Bodnar
v. Wagner, No. 3:07-CV-2038, 2010 WL 56097, at *7 (M.D. Pa. Jan. 5,
2010)   Accordingly, we find no private cause of action for monetary
damages for violations of the Pennsylvania Constitution and will grant
defendants' motion to dismiss Count V.

## 6.  Failure to state a claim for conspiracy

Commonwealth Defendants argue that plaintiffs failed to sufficiently
plead a claim for conspiracy.  "To demonstrate a conspiracy under § 1983,
a plaintiff must show that two or more conspirators reached an agreement
to deprive him or her of a constitutional right 'under color of law.'"  Parkway
Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993) (citing Adickes
v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)), abrogated on other
grounds by United Artist Theatre Circuit, Inc. v. Twp. of Warrington, 316
F.3d 392, 400 (3d Cir. 2003).  In asserting such a claim, plaintiff must
demonstrate a "meeting of the minds."  See Adickes, 398 U.S. at 158.
"Bare conclusory allegations of 'conspiracy' or 'concerted action' will not
suffice to allege a conspiracy.  The plaintiff must expressly allege an
agreement or make averments of communication, consultation,
cooperation, or command from which such an agreement can be inferred."
Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992).

The Third Circuit has held that to properly plead a conspiracy,
"plaintiff must assert facts from which a conspiratorial agreement can be

17

inferred." <u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 178 (3d Cir. 2010) (citation omitted).  It found that this requirement satisfies the pleading standard dictated in <u>Twombly</u> and <u>Iqbal</u>, which require a plaintiff asserting a conspiracy plead "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

Reading the allegations in the instant complaint in favor of plaintiffs, we find that a conspiratorial agreement can be inferred.  The allegations suggest an agreement between Mount Airy Casino and the Pennsylvania State Police and demonstrate joint action between the defendants in the arrest and issuance of the criminal trespass citations.  Plaintiffs allege that Defendant Tasetano, after notifying plaintiffs they were no longer allowed on the premises, stated he was calling the Pennsylvania State Police. Security escorted plaintiffs to the front of the casino where Defendants Kaye and Kulick were already present.  After going to an upstairs office, Defendants Asbury and Tasetano prompted the troopers to arrest and issue plaintiffs citations.  Casino security and the troopers escorted plaintiffs out of the casino.

We find that plaintiffs alleged a plausible conspiracy claim.  These facts demonstrate cooperation between casino security and the troopers and suggest that the troopers only consulted security and received a command to arrest plaintiffs.  As we find that allegations of the conspiracy sufficient, we will deny the Commonwealth Defendants' motion to dismiss Count III of the complaint.

**6.  Failure to state a claim for failure to train/supervise**

Commonwealth Defendants move to dismiss Count IV of the complaint, failure to train and supervise, against the Pennsylvania State Police.  Pursuant to our ruling above, we will dismiss the Pennsylvania State Police as a defendant.  Thus, all claims asserted against it as a party are dismissed and we will grant the defendants' motion with regard to Count IV.

## B.  The Casino Defendants' Motion to Dismiss

The Casino Defendants filed a motion to dismiss plaintiffs' complaint. (Doc. 15).  They assert three overarching arguments: plaintiffs' Section 1983 claims should be dismissed; there is no private cause of action under the Pennsylvania Constitution; and plaintiffs' demand for attorney's fees should be dismissed.  We will address each of these arguments respectively.

## 1.  Plaintiffs' Section 1983 Claims

Plaintiffs assert claims of false arrest, false imprisonment, malicious prosecution[5] and conspiracy against the Casino Defendants pursuant to Section 1983.  Defendants argue that they cannot be liable under Section 1983 because they are not state actors.  Plaintiffs argue that even though these defendants are private actors, they may be liable as state actors due to their relationship with the Pennsylvania State Police.

As stated above, to assert a Section 1983 claim, plaintiff must establish that the defendants acted under color of state law.  See Sameric Corp. of Del., Inc., 142 F.3d at 590.  Conduct under color of state law has

---

[5] As stated above, because plaintiffs failed to allege a deprivation of liberty, plaintiffs' Section 1983 malicious prosecution claim will be dismissed against all defendants.  Therefore, we will not address the Casino Defendants' argument concerning that claim.

been treated the same as establishing "state action" under the Fourteenth Amendment.  Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 929 (1982). Generally, private actors do not act under color of state law, thus are not liable under Section 1983.  However, in certain circumstances, a private individual may be treated as a state actor if there is a close nexus between parties.  See Lashko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005).

The United States Supreme Court has articulated tests to determine whether a private individual may "fairly be said to be a state actor."  The parties in the instant suit dispute the application of the "symbiotic relationship test" and whether the alleged conspiracy may make the casino security guards liable as state actors.  The parties also disagree as to whether Mount Airy Casino may be liable pursuant to respondeat superior. We will address each of these arguments, in turn.

*1.  Symbiotic Relationship Test*

Plaintiffs first rely on the "symbiotic relationship test" initially announced by the Supreme Court in Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961), where the Court found that a private restaurant's discriminatory practices could be treated as state action.  The restaurant was located in the state-owned parking authority and the "profits earned by discrimination not only contribute[d] to, but also [were] indispensable elements in, the financial success of a governmental agency."  Id. at 724.  In Crissman v. Dover Downs Entertainment, Inc., the Third Circuit Court of Appeal interpreted Burton as directing the following analysis:

> [W]e conclude that Burton stands for the proposition that, if a "symbiotic" relationship does exist, then, by virtue of the close involvement of the state and interdependence of the actors in the association formed and the challenged activity, the conduct

20

complained of is in fact "fairly attributable" to the state.  Instead of examining the conduct and, then, the state's role in it, Burton would have us look first at the relationship and test whether the conduct could be linked to the joint beneficial activities-as it was in Burton due to the essential revenues flowing from the discriminatory restaurant operation. We view Burton, then, not as an exception to the rule that the conduct complained of must be fairly attributable to the state, but, rather, as providing another vantage point or way of assessing the necessary connection to the state.

Crissman v. Dover Downs Entm't Inc., 289 F.3d 231, 240-41 (3d Cir. 2002).  The Third Circuit emphasized the narrow holding of Burton, explaining that "while Burton remains good law, it was crafted for the unique set of facts presented, and we will not expand its reach beyond facts that replicate what was before the Court in Burton."  Id. at 242.

In applying the symbiotic test to the instant facts, we find plaintiffs did not provide sufficient allegations that a symbiotic relationship existed between Mount Airy Casino and the Pennsylvania State Police.  Pursuant to the holding in Burton and the analysis in Crissman, we look first to the relationship between the parties.  In doing so, the court cannot find any facts that describe a relationship between the two or a "joint beneficial activity."  Plaintiffs assert several facts in their brief in opposition to the motion to dismiss which may have supported the application of the symbiotic relationship test in the present case.  However, these allegations are not contained in the complaint.[6]  Therefore, we decline to find a

---

[6]  Plaintiffs state in their brief:

"The Pennsylvania State Police office is located inside of the casino instead of at a separate location off the casino premises.  It is the sole police authority allowed to investigate criminal activity inside of the casino.  Additionally, Mount Airy

symbiotic relationship between the parties, thus Defendants Asbury and Tasetano may not be treated as state actors under that test.

*2. Conspiracy*

The Casino Defendants also argue that plaintiffs' conspiracy allegations fail both as an alternative theory of finding defendants state actors under Section 1983 and as a separate count in the amended complaint.  Plaintiffs argue that liability may be imputed on private actors where there is an arrangement or agreement that the state actor's judgment is replaced by private actor's judgment or the existence of a conspiracy between the private and state actors.  We find that plaintiffs' argument invokes the "joint action" test, another method by which private actors may be considered state actors under Section 1983.  We will consider whether this test applies to the present set of facts.

In plaintiffs' brief in opposition, they cite Cruz v. Donnelly, 727 F.2d 79 (3d Cir. 1984), a case in which the Third Circuit applied the reasoning in Lugar v. Edmondson Oil Co. Inc., 457 U.S. 922 (1982) and addressed the "joint action test."  In Lugar, the defendant relied on a state created procedure for a prejudgment attachment of plaintiff's property in an ex

--------

Security and state troopers located inside of the casino work so closely together, such that the State Police are dependent on Mount Airy Security."

(Doc. 21, Pls' Br. in Supp. at 5).  Plaintiffs also explain that "[t]he Pennsylvania State Police Gaming Enforcement Division Office, which is located inside of Mount Airy Casino, has exclusive jurisdiction over the casino.  The State Police officers which work at the Gaming Enforcement Office inside of the casino work hand in hand with Mount Airy Security on a daily basis."  (Id. at 6).

parte petition.  Lugar, 457 U.S. at 924.  The Court found that a private person may be fairly said to be a state actor, "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."  Id. at 937.

In Cruz v. Donnelly, the Third Circuit applied the joint action test articulated in Lugar.  727 F.2d at 82.  The plaintiff in Cruz initiated a Section 1983 claim against police officers, a store manager and company for detaining and searching plaintiff for shoplifting.  Id. at 79.  The Third Circuit found that "Lugar teaches that at least when the state creates a system permitting private parties to substitute their judgment for that of a state official or body, a private actor's mere invocation of state power renders that party's conduct actionable under § 1983."  Id. at 82.  The Court also found that a store and its employees cannot be liable under Section 1983 unless, "(1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause."  Id. at 81.  Under Lugar and Cruz, "the deciding inquiry was whether the state official surrendered the exercise of its official judgment to a private party, either pursuant to an agreement or statute, thus turning the private party into a state actor."  Pugh v. Downs, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009).

At this stage of litigation, we find that plaintiffs stated a plausible application of the joint action test.  Plaintiffs allege Defendants Asbury and Tasteano directed Defendants Kaye and Kulick to arrest plaintiffs and issue citations for criminal trespass.  Plaintiffs argue that the troopers did

not conduct an independent investigation and made the arrest based on the casino security guards assertions.  Plaintiffs' allege Defendants Kaye and Kulick lacked probable cause to arrest plaintiffs.  We find, in taking all of the factual allegations in the complaint as true, plaintiffs state a plausible application of the joint action test, therefore Defendants Asbury and Tasetano may be liable as state actors.[7]

While plaintiffs did not explicitly pled the existence of a pre-arranged plan between the defendants, reading the complaint in plaintiffs' favor, we find that they sufficiently pled that the troopers allowed casino security to substitute its judgment in deciding whether to arrest the plaintiffs for criminal trespass.  We find that the parties acted in concert and performed the actions jointly.  There was a smooth unbreaking chain of events where the casino security was working with the Pennsylvania State Police. Casino security was present during the entire situation involving plaintiffs. Based on plaintiffs' allegations, we find the casino security guards were willful participants in a joint action of arresting plaintiffs.  Therefore, we will

---

[7] We do not assign much weigh to the fact that plaintiffs allege that Defendant Tasetano said he was calling the Pennsylvania State Police. We agree with defendants that the mere fact that a private actor called the police does not transform him into a state actor.  See Cooper v. Muldoon, No. 05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006) ("Merely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor.").  However, the continued action between the casino security guards and the troopers suggests more than simply providing information.  Rather, it rises to a level of joint action in the arrest and issuance of the citations to plaintiffs.  As such, we find plaintiffs alleged a plausible claim that Defendants Asbury and Tasetano may be treated as state actors.

deny the Casino Defendants' motion to dismiss them as parties to this suit and find that they may be liable as state actors.

We also find, as explained above, plaintiffs sufficiently pled their conspiracy claim in Count III.  Defendants contend that plaintiffs did not cite any specific allegations of overt acts in support of the conspiracy, whether there was an agreement or when and why the agreement was made.  We disagree.

As stated above, to establish a conspiracy pursuant to Section 1983, plaintiffs must establish two or more conspirators reached an agreement to deprive plaintiffs of a constitutional right "under color of law."  See Parkway Garage, Inc., 5 F.3d 685 at 700.  "The conspiracy must be made up of two or more state actors, or at leas[t] one state actor with a private party deemed to be a state actor."  Pugh, 641 F. Supp. 2d at 475; Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993).  Alleging a conspiracy, or an agreement between the parties, "is really nothing more than another way to show state action as required by § 1983 when a private party is alleged to have violated that statute."  Kost, 1 F.3d at 185.

First, we find that plaintiffs alleged that defendants deprived them of their rights under the Fourth Amendment.  Next, the complaint alleges that Defendants Kaye and Kulick were acting under color of state law at the time of the alleged incident.  As we found above, Defendants Asbury and Tasetano, although private actors, may be deemed to be state actors and were acting jointly with Defendants Kaye and Kulick.

We also find that plaintiffs alleged sufficient overt acts.  Plaintiffs aver that Defendants Asbury and Tasetano caused plaintiffs to be placed under arrest, Defendants Kulick and Kaye arrested plaintiffs and that all the

25

defendants caused plaintiffs to be maliciously prosecuted.  In construing the facts in the complaint in favor of plaintiff, we find that plaintiffs alleged that the purpose of the conspiracy was to punish the plaintiffs for their actions.  (Doc. 1, Compl. ¶ 32).  We also find that the allegations indicate the timing and place of the events that were a part of the alleged conspiracy which led to the arrest and citations.  Therefore, we find that plaintiffs provided adequate allegations to support their conspiracy claim.  We will deny the Casino Defendants' motion to dismiss Count III for conspiracy.

*3.  Respondeat Superior*

The Casino Defendants argue that Mount Airy Casino should be dismissed as a party from the instant suit.  Both defendants and plaintiffs cite Monell v. Department of N.Y.C., 436 U.S. 658 (1978) in support of their arguments for why Mount Airy Casino should or should not be liable for the actions of its security guards.  Defendants argue there is no Section 1983 cause of action based on respondeat superior.  They also argue that plaintiffs did not allege that Defendants Asbury and Tasetano were acting pursuant to Mount Airy Casino policy or custom.

In Monell v. Department of N.Y.C., the Supreme Court held that municipalities can be found liable under Section 1983 actions when the municipality itself caused a constitutional violation.  436 U.S. at 694.  However, the Court has rejected attempts to hold municipalities liable under the theories of respondeat superior or vicarious liability.  See id. at 694.  "[I]t is [only] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as

26

an entity is responsible under § 1983." Id.

While Monell applies to municipalities, its reasoning is helpful in determining whether a private corporation can be liable for the alleged constitutional violations of its employees. See Lassoff v. New Jersey, 414 F. Supp. 2d 483, 494 (D.N.J. 2006); Shay v. Cnty. of Berks, 2003 WL 21973318, at *4 n.7 (E.D. Pa. June 12, 2003) (citing several cases where "[m]any appellate and district courts have held that [the Monell] rule applies with equal force to private employers who have been deemed state actors."); Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992) (finding "every circuit court to consider the issue [of Monell] has extended the holding to private corporations as well.").

In applying the reasoning of Monell to a private corporation, "[j]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." Regelman v. Weber, No. 10-675, 2011 WL 1085685, at *5 (W.D. Pa. Mar. 21, 2011).  Therefore, we find that Mount Airy Casino cannot be found liable based on respondeat superior. Furthermore, plaintiffs do not allege that Mount Airy Casino had a policy or custom which caused plaintiffs' constitutional rights to be violated. Accordingly, we will grant defendants' motion and dismiss Mount Airy Casino as a defendant.[8]

───────────────────

[8]  The Casino Defendants also argue that if Counts I, II, III and V are dismissed then this court should decline to exercise supplemental jurisdiction over the plaintiffs' state law claims.  Defendants request that the case be transferred to the Monroe County Court of Common Pleas.  As we will deny defendants' motion to dismiss Defendants Asbury and

## 2. Pennsylvania Constitution Claim

The Casino Defendants seek the dismissal of Count V of the complaint asserting a claim of false arrest and false imprisonment under Article I, Section 8 of the Pennsylvania Constitution.  As we previously ruled upon this issue, we will grant their motion and dismiss Count V of the complaint.

## 3. Attorney's fees

Finally, the Casino Defendants move to dismiss plaintiffs' request for attorney's fees, as they argue that the circumstances do not warrant granting such fees.  We disagree and will deny defendants' motion.

"Under the general rule, each party bears its own costs and attorney's fees."  Cnty. of Morris v. Nationalist Movement, 273 F.3d 527, 535 (3d Cir. 2001).  However, Section 1988 provides, "[i]n any action or proceeding to enforce a provision of section[] . . .1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  Section 1988 is "an incentive for the private enforcement of civil rights" and allows for "the award of attorneys' fees following a section 1983 action."  Staten v. Housing Auth. of City of Pittsburgh, 638 F.2d 599, 601-02 (3d Cir. 1980).  A prevailing plaintiff in a Section 1983 case should generally recover attorney's fees absent special circumstances.  Cnty. of Morris, 273 F.3d at 535 (citing Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)).

Plaintiffs bring the instant suit pursuant to Sections 1983 and 1988.

---

Tasetano, we maintain jurisdiction over them as parties to the instant suit and will deny defendants' motion to transfer the case.

28

If they prevail, they may be awarded attorney's fees.  Therefore, we will deny defendants' motion to strike plaintiffs' request for fees.

**Conclusion**

For the above stated reasons, we will grant in part and deny in part defendants' motions to dismiss the complaint.  (Docs. 14, 15).  Defendants Pennsylvania State Police and Mount Airy Casino will be dismissed as a parties to this suit.  The claims asserted against Defendant Kaye and Kulick in their official capacities will be dismissed.  Commonwealth Defendants' motion to dismiss Count IV, failure to train and supervise against the Pennsylvania State Police, will be granted.  Commonwealth Defendants and the Casino Defendants' motions to dismiss Count V under the Pennsylvania Constitution will be granted.  Defendants' motion to dismiss Count II, 1983 malicious prosecution, will be granted.  Defendants' motions will be denied in all other respects.

Therefore, the surviving claims against Defendants Asbury and Tasetano and Defendants Kaye and Kulick, in their individual capacities, are: Count I, false arrest and false imprisonment pursuant to Sections 1983 and 1988; Count III, conspiracy pursuant to Sections 1983 and 1988; Count VI, false arrest and false imprisonment pursuant to state law; Count VII, malicious prosecution pursuant to state law; and Count VIII, intentional infliction of emotion distress pursuant to state law.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PETER C. LUCK and** | : | **No. 3:12cv887** |
| **KENNETH N. WYNDER, JR.,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **MOUNT AIRY #1, LLC;** | : | |
| **LIANNE R. ASBURY;** | : | |
| **TREVOR TASETANO;** | : | |
| **PENNSYLVANIA STATE POLICE;** | : | |
| **JOSEPH J. KULICK, JR.; and** | : | |
| **MARK A. KAYE,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, wit this 4th day of October 2012, defendants' motions (Docs. 14, 15) are hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1) Defendants Pennsylvania State Police and Mount Airy #1, LLC are **DISMISSED**;

2) The claims asserted against Defendants Kaye and Kulick in their official capacities are **DISMISSED**;

3) Count II, Section 1983 malicious prosecution claim against all defendants, is **DISMISSED**;

4) Count IV, failure to train and supervise, against the Pennsylvania State Police is **DISMISSED**;

5) Count V, false arrest and false imprisonment pursuant to the Pennsylvania Constitution, against all defendants is **DISMISSED**; and

6) Defendants' motions are **DENIED** in all other respects.  The surviving claims against Defendants Asbury and Tasetano and Defendants Kaye and Kulick, in their individual capacities, are: Count I, false arrest and false imprisonment pursuant to Sections 1983 and 1988; Count III, conspiracy pursuant to Sections 1983 and 1988; Count VI, false arrest and false imprisonment pursuant to state law; Count VII, malicious prosecution pursuant to state law; and Count VIII, intentional infliction of emotion distress pursuant to state law.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**